**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JORGE ALBERTO RUIZ-GIEL,

Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

Respondent.

No. 14-9510
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

Jorge Alberto Ruiz-Giel, a Salvadoran national, seeks review of a Board of

Immigration Appeals' (BIA's) decision upholding his removal as an aggravated felon

and denying relief under the Convention Against Torture (CAT). We have

jurisdiction under 8 U.S.C. § 1252(a)(1), as limited by § 1252(a)(2)(C), and we deny

the petition in part and dismiss in part.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

Mr. Ruiz's parents brought him as an infant to the United States in 1986. In 2002, he became a lawful permanent resident. But over the ensuing decade, Mr. Ruiz garnered two felony convictions in Nevada state court. Specifically, in 2005, he pleaded guilty and was convicted of conspiring to commit robbery. And in 2011, he pleaded guilty and was convicted of possessing a controlled substance for the purpose of sale. On the controlled-substance conviction, Mr. Ruiz was sentenced to a minimum of 12 months' imprisonment.

As a result of the convictions, the Department of Homeland Security (DHS) served Mr. Ruiz with a notice to appear on charges that he was removable as an aggravated felon. An Immigration Judge (IJ) sustained the charges, and Mr. Ruiz sought relief under the CAT.

During a hearing, Mr. Ruiz testified that he had been to El Salvador only once, to meet his now-deceased grandmother. He also testified that, while detained by immigration officials, he acquired a gang-related tattoo that would create problems with the two main gangs in El Salvador.

An expert on conditions in El Salvador testified that Mr. Ruiz would likely be tortured or killed by a gang if deported to that country because of his gang-related tattoos, inability to speak Spanish, limited familial support, and status as a deportee. When asked whether El Salvadoran police would assist Mr. Ruiz if he sought

protection, the expert testified that the police "might or might not do anything" to help him. R. at 215.

At the conclusion of the hearing, the IJ determined that Mr. Ruiz had not shown eligibility for CAT relief. Specifically, the IJ found that while it was possible he would be harmed by gangs in El Salvador, there was no persuasive evidence showing that police were likely to acquiesce in that conduct. Consequently, the IJ ordered Mr. Ruiz removed to El Salvador.

The BIA upheld Mr. Ruiz's removal, concluding that (1) state court documents showing Mr. Ruiz's convictions were authentic; (2) Mr. Ruiz's controlled-substance conviction was an aggravated felony under the modified categorical approach; and (3) Mr. Ruiz had not sufficiently shown acquiescence by El Salvadoran police if gang members sought to torture or kill him.

## DISCUSSION

### I. Standards of Review

Because a single member of the BIA entered a brief affirmance order under 8 C.F.R. § 1003.1(e)(5), we review the BIA's decision as the final order of removal, but "we may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007). We review the BIA's factual findings for substantial evidence, and its legal conclusions de novo. *Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009).

- 3 -

## II.  Aggravated Felony

A.  Admissibility of the Conviction Documents

Mr. Ruiz argues that DHS failed to properly authenticate the criminal information and judgment of conviction that were used to prove his controlled-substance conviction.  He complains that DHS labeled the documents in an exhibit list's table of contents as a "*Certified* Record of Conviction," R. at 489 (emphasis added), and that "the simple act of identifying a document in a table of contents as certified" does not "mean that the drafter is a legal custodian of the document."  Pet'r Br. at 23.  He further argues that the BIA engaged in impermissible factfinding by "misunderstanding or misrepresent[ing]" his argument to be that DHS "'self-authorized' the documents."  *Id.* at 22.

Mr. Ruiz's arguments are flawed.  First, the BIA's interpretation of a party's argument is not a finding of fact.  Second, the BIA concluded that the conviction documents were authentic because they bore the Nevada court's electronic file stamp and were certified by the assistant chief counsel of DHS as "originals, or copies thereof, from the records of [DHS]."  R. at 488.  The BIA did not, as Mr. Ruiz suggests, rely on the label given to the documents in a table of contents.  Indeed, the BIA relied on *In re Velasquez*, 25 I. & N. Dec. 680, 684 (BIA 2012), which held that because "the precise methods of authentication described in [the governing statute

- 4 -

and regulations[1]] are not mandatory or exclusive[,] . . . [t]he guiding principle is that proper authentication requires some sort of proof that the document is what it purports to be." *Id.* (italics and internal quotation marks omitted).

Mr. Ruiz does not contest the BIA's reliance on *In re Velasquez*. Nor does he complain that the documents contain any errors or that he has not been convicted as DHS alleged. Indeed, he appears to acknowledge that there would have been no problem admitting the documents if DHS had stated on the record that it had "received the documents as originals and/or copies of records kept by the legal custodian of [DHS]." Pet'r Br. at 24 (internal quotation marks omitted). Yet that is essentially what the DHS assistant chief counsel stated in his certification to the immigration court. *See* R. at 488 ("I HEREBY CERTIFY that the annexed documents are originals, or copies thereof, from the records of the said Department of Homeland Security, relating to . . . JORGE ALBERTO RUIZ-GIEL."). The BIA went even further, holding that the certification, in combination with the state court file stamps, was sufficient to show the documents' authenticity. Mr. Ruiz has

---

[1]    In 8 U.S.C. § 1229a(c)(3)(B), Congress provided a list of "documents or records (or a certified copy of such an official document or record)" that "shall constitute proof of a criminal conviction." The list includes "[a]n official record of judgment and conviction." *Id.* § 1229a(c)(3)(B)(i). Regulations accompanying the statute provide a variety of ways to authenticate such a record. *See, e.g.*, 8 C.F.R. § 1003.41(b) ("attest[ation]" by an immigration officer that a copy is "a true and correct copy of the original"); *id.* § 1003.41(c) ("certifi[cation]" by a DHS official and a state or court official that an electronically received document is an official record from the state's record repository); 8 C.F.R. § 287.6(a) ("attest[ation] by the" record's legal custodian); *id.* § 1003.41(d) (admission of "[a]ny other evidence that reasonably indicates the existence of a criminal conviction").

provided nothing to undermine the BIA's determination that the conviction documents were authentic and admissible.[2]

B.  Mr. Ruiz's Controlled-Substance Conviction

During Mr. Ruiz's removal proceeding, DHS had "the burden of establishing by clear and convincing evidence that [he] was subject to removal" for having an aggravated-felony conviction.  *Cruz-Garza v. Ashcroft*, 396 F.3d 1125, 1130 (10th Cir. 2005) (internal quotation marks omitted).  The BIA consulted the criminal information to ascertain that the controlled substance involved in the crime was heroin, and determined that DHS had met its burden under the process known as the modified categorical approach.[3]  Mr. Ruiz challenges the BIA's resort to the information to determine if his conviction constituted an aggravated felony.

---

[2]     DHS suggests that this court lacks jurisdiction to review the documents' admissibility because admissibility does not implicate a constitutional claim or a question of law.  *See Waugh v. Holder*, 642 F.3d 1279, 1281 (10th Cir. 2011) ("[O]ur jurisdiction to review an order of removal against an aggravated felon is significantly limited:  we may review the removal order only to the extent petitioner raises constitutional or legal challenges to the order[.]").  But it seems axiomatic that the jurisdiction-stripping consequences of an aggravated-felony conviction do not kick in until it has been determined that there has indeed been a conviction.  *See* 8 U.S.C. § 1229a(c)(3)(A) (providing that the government "has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable").  If DHS submitted sufficient proof of a conviction, the issue then becomes whether that conviction qualifies as an aggravated felony.  If the answer is in the affirmative, only then does the jurisdictional bar arise.

[3]     In the context of a guilty plea, the judicial records that may be reviewed under a modified categorical approach include "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or [some]

(continued)

- 6 -

Before addressing whether the information was properly consulted, we pause to set out the process necessarily leading up to the modified categorical approach.

Under the straight categorical approach, courts "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). At this stage, "only . . . the statutory definitions of the prior offenses, and not . . . the particular facts underlying those convictions" are relevant. *See Vargas v. Dep't of Homeland Sec.*, 451 F.3d 1105, 1108 (10th Cir. 2006) (internal quotation marks omitted). "Accordingly, a state offense is a categorical match with a generic federal offense only if a conviction of the state offense necessarily involved facts equating to the generic federal offense." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (brackets, ellipsis, and internal quotation marks omitted). But if the elements of the crime of conviction reach "a broad range of conduct, some of which would constitute an aggravated felony and some of which would not," the analysis is modified to "resolve the ambiguity by consulting reliable judicial records." *Vargas*, 451 F.3d at 1109 (internal quotation marks omitted).

The BIA did not set out its analysis leading up to its application of the modified categorical approach. In other words, the BIA did not discuss whether

comparable judicial record of this information." *Vargas v. Dep't of Homeland Sec.*, 451 F.3d 1105, 1108 (10th Cir. 2006) (internal quotation marks omitted).

- 7 -

Mr. Ruiz's conviction for possessing a controlled substance for sale necessarily involved facts equating to a generic federal offense.[4] Rather, it proceeded directly to the modified categorical approach, as Mr. Ruiz had focused his arguments on (1) the necessity of the modified categorical approach because the judgment of conviction did not identify the controlled substance involved; and (2) the limitation noted in *Descamps* that indivisible state statutes cannot be analyzed under the modified categorical approach.

Before this court, Mr. Ruiz advances, as he must, the same arguments that he presented to the BIA, essentially conceding that his conviction statute categorically matches a generic federal offense in all relevant respects except for the identity of the controlled substance. We therefore proceed, as did the BIA, to determine whether *Descamps* permits the modified categorical approach in this case.

Under *Descamps*, the modified categorical approach comes into play only when the statute of conviction is divisible, meaning that it

> sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile. If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the

---

[4]    There are "two routes through which a state drug conviction can qualify as an aggravated felony." *Garcia v. Holder*, 440 F. App'x 660, 663 (10th Cir. 2011) (internal quotation marks omitted) (citing *Daas v. Holder*, 620 F.3d 1050, 1054 (9th Cir. 2010), and *Catwell v. Att'y Gen.*, 623 F.3d 199, 206 (3d Cir. 2010)). The conviction qualifies if either "'(a) it would be punishable as a felony under the federal Controlled Substances Act [21 U.S.C. §§ 801-971], or (b) it is a felony under state law and includes an illicit trafficking element.'" *Id.* (alteration in original) (quoting *Catwell*, 623 F.3d at 206).

> modified categorical approach permits . . . courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction.

*Descamps*, 133 S. Ct. at 2281. An indivisible statute, on the other hand, contains "a single, indivisible set of elements." *Id.* at 2282. For instance, an indivisible statute would criminalize assault with a weapon, instead of criminalizing assault with a gun, a knife, or an explosive. *See id.* at 2290. The modified categorical approach is not available for an indivisible statute. *Id.* at 2281-82. Thus, we must determine whether Mr. Ruiz's conviction statute "list[s] potential offense elements in the alternative, render[ing] opaque which element played a part in [his] conviction," such that the BIA properly consulted the criminal information under the modified categorical approach. *Id.* at 2283.

Mr. Ruiz was convicted under Nev. Rev. Stat. § 453.337(1), which provides that "it is unlawful for a person to possess for the purpose of sale flunitrazepam, gamma-hydroxybutyrate, any substance for which flunitrazepam or gamma-hydroxybutyrate is an immediate precursor[,] or any controlled substance classified in schedule I or II." Mr. Ruiz's judgment of conviction does not identify the controlled substance at issue. According to Mr. Ruiz, at least one of Nevada's schedule I substances (1,4-Butanediol) is not listed in the federal drug schedules. *See* Nev. Admin. Code § 453.510(4) (classifying 1,4 Butanediol as a hallucinogenic substance); 21 C.F.R. § 1308.11-.15 (listing the federal drug schedules, none of

- 9 -

which reference 1,4 Butanediol).[5]  Thus, Mr. Ruiz asserts that he is not categorically an aggravated felon and that the modified categorical approach would be necessary to determine whether he is.

Mr. Ruiz proceeds, then, to argue that *Descamps* bars the modified categorical approach because § 453.337(1) is indivisible.  He seems to reason that the controlled substance's identity is not an offense element because "a jury in Nevada would [not] have been required to agree unanimously on the *identity* of the controlled substance." Pet'r Br. at 32.  But Mr. Ruiz is mistaken.[6]  In Nevada, "the particular identity of the controlled substance" is an element of the offense.  *See Muller v. Sheriff, Clark Cnty.*, 572 P.2d 1245, 1245 (Nev. 1977).  Indeed, the identity of the controlled substance possessed for the purpose of sale determines whether the defendant must be charged under § 453.337 (flunitrazepam, gamma-hydroxybutyrate, and schedule I and II substances) or under § 453.338 (schedule III, IV, and V substances).  Because § 453.337 lists specific controlled substances alternatively, and it does not employ an "indeterminate" moniker open to hypothetical conceptions, *Descamps*, 133 S. Ct.

---

[5]  Although 1,4-Butanediol is not listed in the federal drug schedules, we note that courts have found it to be a proscribed controlled-substance analogue under 21 U.S.C. § 813.  *See, e.g.*, *United States v. Washam*, 312 F.3d 926, 931 (8th Cir. 2002).

[6]  As the government points out, Mr. Ruiz has seemingly adopted conflicting positions in this case.  On the one hand, he claims that drug identity is an offense element, precluding a categorical determination that he is an aggravated felon.  And on the other hand, he claims that drug identity is not an element, precluding a modified categorical approach.  Either way, he loses.

- 10 -

at 2290, we conclude that the statute is divisible.[7] *Cf. In re Chairez-Castrejon*, 26 I. & N. Dec. 349, 354-55 (BIA 2014) (applying *Descamps* and concluding that the necessary showing of divisibility was not made). In particular, § 453.337 resembles *Descamps*' description of a divisible statute that would "criminalize[ ] assault with any of eight specified weapons." 133 S. Ct. at 2290. Section 453.337 similarly criminalizes possession for the purpose of sale any of a multitude of specified controlled substances. Thus, we conclude that the statute is suitable for the modified categorical approach.[8]

Mr. Ruiz advances no other challenges to the BIA's holding that his § 453.337 conviction qualifies as an aggravated felony. He has thus waived any other challenge to that holding. *See Iliev v. Holder*, 613 F.3d 1019, 1026 n.4 (10th Cir. 2010)

---

[7] The Ninth Circuit has reached a similar conclusion while analyzing California's unauthorized-possession-of-a-controlled-substance statute, Cal. Health & Safety Code § 11377(a). That statute lists five categories of prohibited substances, either by reference to drug-schedule numbers or other statutes. The court held that because § 11377(a) "criminalizes the possession of any one of th[e] [listed] substances[,] [t]he statute thus effectively creates several different crimes." *Coronado v. Holder*, 747 F.3d 662, 668-69 (9th Cir. 2014) (ellipsis and internal quotation marks omitted). Consequently, the court determined that the statute was suitable under *Descamps* to a modified categorical analysis. *Id.* at 669.

[8] Mr. Ruiz complains that the BIA "erred as a matter of law" by not explaining its conclusion that a modified categorical approach was consistent with *Descamps*. Pet'r Br. at 34. But he fails to cite any authority mandating a particular quantum of analysis when the BIA addresses a party's argument. And as the Supreme Court has stated, an agency need only set forth the basis of its administrative action "with such clarity as to be understandable." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). In any event, whether § 453.337 is divisible under *Descamps* is a purely legal question that we review de novo.

(observing that failure to develop an argument in the opening brief results in the argument being waived).

C.  The CAT

Mr. Ruiz turns next to the BIA's conclusion that he does not qualify for CAT relief.  He argues that the BIA erred by (1) "finding that the [IJ] accurately applied the 'willful blindness' standard," Pet'r Br. at 42; (2) "failing to determine the likelihood that a public official would more likely than not acquiesce to the 'mental torture' of individuals like Mr. Ruiz," *id.* at 44; and (3) concluding that Mr. Ruiz was not entitled to CAT relief despite the evidence showing that Mr. Ruiz might be tortured or killed in El Salvador.  The government responds that Mr. Ruiz's aggravated-felony conviction deprives this court of jurisdiction to consider his CAT-related arguments.  We agree with the government, but only as to Mr. Ruiz's second and third arguments.

When an alien is ordered removed because of an aggravated-felony conviction, we can review only constitutional claims or questions of law.  8 U.S.C. § 1252(a)(2)(C) & (D).  Mr. Ruiz's first argument, concerning the willful-blindness standard, implicates a question of law.  *See Gallimore v. Holder*, 715 F.3d 687, 690 (8th Cir. 2013) (determining that criminal alien's "challenge[ ] [to the willful-blindness] legal standard used by the BIA" was reviewable).  Thus, it is reviewable.

The CAT "prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Karki v. Holder*, 715 F.3d 792, 806 (10th Cir. 2013) (internal quotation marks omitted). "[W]illful blindness suffices to prove acquiescence." *Id.*

Mr. Ruiz's argument appears to be that the IJ interpreted "willful blindness" to require governmental awareness of a specific threat against him, rather than governmental awareness of threats to "similarly situated" persons. Pet'r Br. at 40. Mr. Ruiz claims that the IJ's interpretation, and the BIA's acceptance of that interpretation, contravenes *Karki v. Holder*, in which this court held that a "[p]etitioner does not need to present evidence that the government knows of the specific threat against him in order to show that the government would likely turn a blind eye to his torture" upon removal to his native country. 715 F.3d 792, 807 (10th Cir. 2013).

The IJ in Mr. Ruiz's case defined "willful blindness" as "requir[ing] that prior to the activity constituting the torture[,] law enforcement have awareness of such activity and thereafter breach their legal responsibility to intervene or prevent the activity." R. at 143. The BIA determined that the IJ's definition was consistent with *Karki*, and we agree. In defining "willful blindness," the IJ observed that "law enforcement in El Salvador is overwhelmed by gangs and high crime." *Id.* This general statement is consistent with *Karki*'s admonition that "actual knowledge" by

- 13 -

the government of a specific threat is not required.  *Karki*, 715 F.3d at 807.  And while the IJ also observed that "[t]here is evidence that the police may be less interested in helping [Mr. Ruiz]," R. at 143, we do not read that observation as importing an actual-knowledge requirement into the willful-blindness standard. Rather, viewed in the context of the IJ's other statements, the IJ was simply recounting Mr. Ruiz's evidence that police "might or might not" help a person, like Mr. Ruiz, who has gang-related tattoos and who has been removed from the United States.  R. at 215.  Thus, the agency did not utilize a flawed willful-blindness standard.

Finally, we turn to this court's jurisdiction over Mr. Ruiz's second and third CAT arguments.  We conclude that those arguments are not reviewable as they attempt to raise issues of fact.  Specifically, to determine the likelihood of governmental acquiescence to torture (Mr. Ruiz's second argument), and whether the evidence as a whole shows Mr. Ruiz's eligibility for CAT relief (his third argument), we would have to weigh the evidence in this case.  The criminal-alien bar prevents that.  *See Siwe v. Holder*, 742 F.3d 603, 613 (5th Cir. 2014) (holding that the court lacked jurisdiction to review whether alien "established that he will more likely than not be tortured if . . . removed"); *Gallimore*, 715 F.3d at 690 (observing that factual disputes and determinations regarding CAT claims "are foreclosed by the criminal alien bar"); *Green v. Att'y Gen.*, 694 F.3d 503, 507-08 (3d Cir. 2012) (concluding that factual determinations regarding government acquiescence and eligibility for

CAT relief are subject to the criminal-alien bar); *Saintha v. Mukasey*, 516 F.3d 243, 249-50 (4th Cir. 2008) (stating that the "likelihood that the [criminal alien] would suffer torture at the government's consent or acquiescence" presents a factual question beyond review); *Boakai v. Gonzales*, 447 F.3d 1, 5 (1st Cir. 2006) (concluding that the court lacked jurisdiction to consider criminal alien's "argument that the BIA was wrong in rejecting the CAT claim"); *Hamid v. Gonzales*, 417 F.3d 642, 647 (7th Cir. 2005) (holding that the criminal-alien bar applied to alien's CAT claim that the IJ failed to "correctly consider[ ], interpret[ ], and weigh[ ] the evidence"); *but see Edu v. Holder*, 624 F.3d 1137, 1141-42 (9th Cir. 2010) (stating that the criminal-alien bar "does not deprive [a court] of jurisdiction over denials of deferral of removal under the CAT," and that "jurisdiction extends to both issues of law and issues of fact").

## CONCLUSION

We deny Mr. Ruiz's petition for review to the extent he challenges the BIA's determinations that he is an aggravated felon and that the correct willful-blindness standard was used for his CAT claim. We dismiss the remainder of the petition as jurisdictionally barred.

Entered for the Court


Jerome A. Holmes
Circuit Judge

- 15 -