# United States Court of Appeals
## For the First Circuit

No. 16-1821

ORAL AGUSTAS SWABY,

Petitioner,

v.

SALLY Q. YATES,[*]
Acting Attorney General of the United States,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Stahl, Lipez,
Circuit Judges.

Patrick N. Long, on brief for petitioner.
Jessica E. Burns, with whom Rachel L. Browning, Trial
Attorney, Office of Immigration Litigation, U.S. Department of
Justice, Benjamin C. Mizer, Principal Deputy Assistant Attorney
General, Civil Division, and Keith McManus, Assistant Director,
Office of Immigration Litigation, were on brief, for respondent.

January 30, 2017

---

[*] Pursuant to Fed. R. App. 43(c)(2), Sally Q. Yates has been
substituted for Loretta E. Lynch as Attorney General.

**BARRON**, **Circuit Judge**. Oral Swaby, a citizen of Jamaica, petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming his order of removal and denying his request for cancellation of removal. We dismiss in part and deny in part the petition.

## I.

Swaby lawfully entered the United States on a tourist visa in May 1996, and he adjusted to lawful permanent resident status on May 14, 2010. On September 4, 2013, Swaby pled nolo contendere in Rhode Island Superior Court to three counts of manufacturing, delivering, or possessing with intent to distribute a controlled substance -- to wit, marijuana -- in violation of Rhode Island General Laws Section 21-28-4.01(a)(4)(i). In consequence, on February 25, 2015, the Department of Homeland Security ("DHS") served Swaby with a Notice to Appear ("NTA"). The NTA charged Swaby with removability under 8 U.S.C. § 1227(a)(2)(B)(i).

That provision of federal immigration law authorizes the removal of an alien convicted of a violation of any federal or state law "relating to a controlled substance (as defined in section 802 of Title 21)." Section 802 of Title 21 limits the term "controlled substance" to a "drug or other substance" included in one of the five federal drug schedules. 21 U.S.C § 802(6).

Swaby initially chose to appear pro se before the Immigration Judge ("IJ"), whereupon Swaby admitted the allegations contained in the NTA, accepted an order of removal, and waived his right to appeal the IJ's decision. But, on July 29, 2015, with the assistance of counsel, Swaby filed a motion to stay his removal and to reopen and terminate removal proceedings. He contended that, pursuant to Mellouli v. Lynch, 135 S. Ct. 1980 (2015), which had been decided in January of that year, his Rhode Island convictions did not qualify as removable offenses under 8 U.S.C. § 1227(a)(2)(B)(i). He also requested cancellation of removal based on a consideration of various equitable factors.

On August 26, 2015, the IJ determined that Swaby was removable under § 1227(a)(2)(B)(i), notwithstanding the Supreme Court's decision in Mellouli, and thus denied Swaby's motion to terminate proceedings. The IJ did, however, grant Swaby's motion to stay removal and reopen proceedings. Due to an oversight by DHS, Swaby was then removed to Jamaica in spite of the stay. After DHS located Swaby and returned him to the United States, the IJ denied Swaby's request for cancellation of removal. Swaby appealed both rulings to the Board of Immigration Appeals ("BIA"), which, on May 24, 2016, affirmed them.

Swaby now petitions for review of the BIA's decision. We have jurisdiction to review the BIA's May 2016 decision to dismiss Swaby's appeal of the IJ's decision pursuant to 8 U.S.C.

- 3 -

§ 1252(a)(1) and § 1252(a)(2), which give the courts of appeals jurisdiction to review constitutional claims and questions of law raised upon a petition for review of a final order of removal against a noncitizen who is removable by reason of having committed a criminal offense covered in § 1227(a)(2)(B).

## II.

As we have noted, the record shows that the "controlled substance" that Swaby was convicted of manufacturing, delivering, or possessing with intent to distribute was marijuana, which is listed on the federal controlled substances schedules. The BIA's conclusion that Swaby's state convictions qualified as convictions for predicate offenses under § 1227(a)(2)(B)(i) may thus seem to be a straightforward one. But, it is not. The reason is that, consistent with Mellouli, the BIA applied what is known as the "categorical approach" to determining whether a state conviction qualifies under § 1227(a)(2)(B)(i). See Mellouli, 135 S. Ct. at 1986. And the application of the categorical approach to the facts of this case presents some complications.

The complications have to do with the breadth of the Rhode Island drug schedules -- and thus with the breadth of the Rhode Island crime at issue. Specifically, the Rhode Island drug schedules included at the relevant time at least one drug -- thenylfentanyl -- not listed on the federal drug schedules. Compare R.I. Gen. Laws § 21-28-2.08(e)(13), with 21 C.F.R.

- 4 -

§ 1308.11-1308.15.  As a result, Rhode Island General Laws Section 21-28-4.01(a)(4)(i) applied more broadly than the federally defined predicate offense set forth in § 1227.

The breadth of the Rhode Island offense potentially matters because Mellouli makes clear that the categorical approach "looks to the statutory definition of the offense of conviction, not to the particulars of the alien's behavior."  135 S. Ct. at 1986.  Accordingly, under § 1227, a "state conviction triggers removal only if, by definition, the [state] underlying crime falls within a category of removable offenses defined by federal law."  Id.  Thus, it would appear that, under the categorical approach, this state law offense did not fall within the federal predicate offense set forth in § 1227, given that the state law offense had a broader scope of application due to the broader sweep of the state drug schedules.

Nevertheless, the BIA ruled that the breadth of the Rhode Island offense was of no moment under the categorical approach. The BIA did so based on its decision in Matter of Ferreira, 26 I. & N. Dec. 415 (BIA 2014).  There, the BIA ruled that, under Gonzalez v. Duenas-Alvarez, 549 U.S. 183 (2007), a noncitizen must show that there is a "realistic probability" that the state actually would prosecute cases involving any substances listed on state drug schedules that are not listed on the federal schedules. Id. at 421-22.  Absent that showing, the BIA held, the state

controlled substances offense should be treated as if it did fall within the federally defined crime under § 1227(a)(2)(B)(i), as the seemingly problematic sweep of the state crime would then be more theoretical than real.  Id. at 419.

Deploying this same logic, the BIA explained in this case that Swaby had failed to show that there was a realistic probability that Rhode Island would actually prosecute offenses under Rhode Island General Laws Section 21-28-4.01(a)(4)(i) for thenylfentanyl, the one drug listed on the state schedules but not the federal ones.[1]  The BIA thus concluded that, under Matter of Ferreira, Swaby's convictions were for a crime that fell within the federally defined offense, notwithstanding that the state crime did appear to apply more broadly than the federally defined offense.  For that reason, the BIA concluded that Swaby's convictions qualified as removable offenses under the categorical approach.

Swaby contends on appeal that Duenas-Alvarez does not support the BIA's conclusion.  And we agree.  Duenas-Alvarez made no reference to the state's enforcement practices.  It discussed only how broadly the state criminal statute applied.  In doing so,

---

[1]  We note, though, that Rhode Island has retained thenylfentanyl on Schedule I despite enacting other amendments to that drug schedule in 2012, 2013, and 2014.  See 2012 R.I. Pub. Laws ch. 415, § 36; 2013 R.I. Pub. Laws ch. 404, § 1; 2014 R.I. Pub. Laws ch. 71, § 1.

Duenas-Alvarez does make clear that to find that a state statute proscribes a broader range of conduct than a federal crime "requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the federal definition of the crime. Duenas-Alvarez, 549 U.S. at 193. But, that sensible caution against crediting speculative assertions regarding the potentially sweeping scope of ambiguous state law crimes has no relevance to a case like this. The state crime at issue clearly does apply more broadly than the federally defined offense. Nothing in Duenas-Alvarez, therefore, indicates that this state law crime may be treated as if it is narrower than it plainly is. Nor are we aware of any circuit court case, whether from this circuit or from any other, that supports the BIA's surprising view that, in applying the categorical approach, state law crimes should not be given their plain meaning.[2]

---

[2] See United States v. Fish, 758 F.3d 1, 6 (1st Cir. 2014) (noting, outside the context of § 1227, but with reference to the categorical approach more generally, that "a state's definition of a crime is overbroad if its elements allow for a conviction without satisfying the elements Congress has provided to define the required predicate offense" (emphasis added)); see also United States v. Aparicio-Soria, 740 F.3d 152, 158 (4th Cir. 2014) (en banc) ("We do not need to hypothesize about whether there is a 'realistic probability' that Maryland prosecutors will charge defendants engaged in [the broader conduct]; we know that they can because the state's highest court has said so." (emphasis added)); Ramos v. U.S. Att'y Gen., 709 F.3d 1066, 1071-72 (11th Cir. 2013)

Simply put, the plain terms of the Rhode Island drug schedules make clear that the Rhode Island offense covers at least one drug not on the federal schedules. That offense is simply too broad to qualify as a predicate offense under the categorical approach, whether or not there is a realistic probability that the state actually will prosecute offenses involving that particular drug. See Mellouli, 135 S. Ct. at 1986.

**III.**

The government does make a fallback argument, in which it asks us to uphold the BIA's decision on a different ground. The government argues that, under what is known as the "modified categorical approach," Swaby's state law convictions do qualify as predicates for removal under § 1227(a)(2)(B)(i), even if they do not qualify under the categorical approach itself.

---

(Duenas-Alvarez does not require showing that the state "would use the [state] statute to prosecute conduct falling outside the generic definition . . . when the statutory language itself, rather than 'the application of legal imagination' to that language, creates the 'realistic probability' that a state would apply the statute to conduct beyond the generic definition"); Jean-Louis v. Att'y Gen., 582 F.3d 462, 481 (3d Cir. 2009) (finding the "realistic probability" test inapplicable where the statute's "elements . . . are clear, and the ability of the government to prosecute a defendant under [the statute] is not disputed"); United States v. Grisel, 488 F.3d 844, 850 (9th Cir. 2007) (en banc) ("Where, as here, a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime. The state statute's greater breadth is evident from its text." (quoting Duenas-Alvarez, 549 U.S. at 193)).

In pressing this argument, the government points out that, as Mellouli itself makes clear, the categorical approach gives way to the "modified categorical approach" when the state law offense "contain[s] several different crimes, each described separately." Mellouli, 135 S. Ct. at 1986 n.4 (quoting Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013)). In such cases, "a court may determine which particular offense the noncitizen was convicted of by examining the charging document and jury instructions, or in the case of a guilty plea, the plea agreement, plea colloquy, or some comparable judicial record of the factual basis for the plea." Moncrieffe, 133 S. Ct. at 1684 (internal quotation marks omitted). And, in cases of that sort, if the adjudicator can determine from those records the particular state law offense for which the noncitizen was convicted, then the adjudicator need only determine whether that particular state law offense falls within the predicate federal offense under § 1227(a)(2)(B)(i). See Mellouli, 135 S. Ct. at 1986 n.4.

The government contends that we should apply the modified categorical approach to Rhode Island General Laws Section 21-28-4.01(a)(4)(i). The government contends that this state statute does not set out one overarching offense covering all "controlled substances" on the state schedules. Rather, in the government's view, this state law offense creates distinct state law crimes for each distinct drug listed on the state drug

schedules. From that premise, the government then argues that Swaby's actual crime of conviction falls within the federally defined removable offense under § 1227(a)(2)(B)(i) because the relevant plea documents make clear that Swaby's convictions were for manufacturing, delivering, or possessing with intent to distribute marijuana, a drug that is listed on the federal drug schedules.

Swaby's sole response is that Rhode Island law does not make the particular listed drug involved in the commission of an offense under Rhode Island General Laws Section 21-28-4.01(a)(4)(i) an element of that offense. Rather, Swaby contends, the listed drugs merely set forth the means by which the broader crime of manufacturing, delivering, or possessing with intent to distribute a "controlled substance" may be committed. He thus contends that the modified categorical approach has no application. But we do not agree.

In Mathis v. United States, 136 S. Ct. 2243, 2256-57 (2016), the Supreme Court recently provided guidance about how to resolve the elements versus means issue that determines whether the modified categorical approach applies to a state criminal statute. And here the factors Mathis instructs us to consider lead us to reject Swaby's view.

We start with how the Rhode Island Supreme Court has construed the offense. See Mathis, 136 S. Ct. at 2256 (explaining

that the "threshold inquiry -- elements or means? -- is easy" where
"a state court decision definitively answers the question"). In
State v. Feng, 421 A.2d 1258 (R.I. 1980), the Rhode Island Supreme
Court expressly described the particular type of controlled
substance listed in the state drug schedules as an element of an
offense under Rhode Island General Laws Section 21-28-4.01, rather
than merely as a possible means by which the offense may be
committed. Feng did so in the course of deciding whether there
was a sufficient factual basis to support a guilty plea to the
charge of possession of "a controlled substance to wit, Lysergic
Acid Dithylamide [LSD]" under Rhode Island General Laws Section
21-28-4.01.

Feng explained that a Rhode Island trial court can
establish an adequate factual basis for a plea by reading the
indictment to the defendant, but only if, among other things, "the
elements of the crime are clearly set out." Id. at 1270 (quoting
Seiller v. United States, 544 F.2d 554, 565 (2d Cir. 1975)). Yet,
Feng noted, in the case at hand, the trial judge had "merely
summarized the charge as 'knowledge and intent to possess a
controlled substance.'" Id. at 1270-71. Feng then ruled that
this summary did not suffice to supply the factual basis for the
guilty plea precisely because the "[r]eference to 'a controlled
substance' does not by itself set out the elements of the offense
of possession of the particular controlled substance LSD." Id. at

1271.[3] Moreover, other Rhode Island Supreme Court decisions accord with Feng's description of the drug's type as an element of the offense. See State v. Mendez, 116 A.3d 228, 239 (R.I. 2015) (jury instructions for the crime of possession of a controlled substance specified that "the State must show that the defendant possessed the controlled substance in question"); State v. Jenison, 442 A.2d 866, 875 (R.I. 1982) (possession of a controlled substance requires "intentional control of the designated substance with knowledge of its nature" (emphasis added) (punctuation and citation omitted)).

Our conclusion that this state law crime is divisible by the type of drug also accords with the face of the statute, which is not drafted merely "to offer 'illustrative examples,'" Mathis, 136 S. Ct. at 2256, but instead assigns "different punishments,"

---

[3] In reaching this conclusion, Feng elaborated:

Reference to "a controlled substance" does not by itself set out the elements of the offense of possession of the particular controlled substance LSD. The list of controlled substances contained in chapter 28 of title 21 is exhaustive. Unlawful possession of more than one controlled substance constitutes a separate offense for each such substance possessed. We note also that at the time of Feng's arrest, several controlled substances were seized from his dormitory room, and the indictment itself charged Feng with possession of another controlled substance -- cocaine. In light of the wide range of substances classified as "controlled", we conclude that the trial justice's summary of the charge did not constitute a straightforward statement of the facts underlying the offense of possession of LSD.

Feng, 421 A.2d at 1271.

- 12 -

id., based on the class of a drug, and then "exhaustive[ly]" lists the individual drugs by type on the state drug schedules. Feng, 421 A.2d at 1271; see R.I. Gen. Laws § 21-28-4.01(a)(4). This feature of the Rhode Island statute, under Mathis, also points in favor of the conclusion that the offense sets out distinct crimes based on drug type. Mathis, 136 S. Ct. at 2256.

Finally, Mathis explains that, even where "state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself." Mathis, 136 S. Ct. at 2256. "[A]n indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." Id. at 2257. And the indictment in Swaby's case did exactly this, specifying that Swaby manufactured, delivered, or possessed with intent to distribute "a controlled substance, to wit, [m]arijuana."

Our determination that the statute is divisible by drug type, moreover, comports with the rulings of several of our sister circuits, which have relied on similar considerations in applying the modified categorical approach to other state controlled substance statutes. See United States v. Henderson, 841 F.3d 623, 629 (3d Cir. 2016); Carcamo v. Lynch, 648 F. App'x 306, 311-12 (4th Cir. 2016); Ruiz-Giel v. Holder, 576 F. App'x 738, 743-44

(10th Cir. 2014). In fact, we are aware of no case holding otherwise.[4]

Accordingly, we conclude that the modified categorical approach does apply. And Swaby does not dispute that, under the modified categorical approach, the relevant plea documents suffice to make clear that Swaby's convictions were for the manufacturing, delivering, or possessing with intent to distribute marijuana. We thus conclude that Swaby's convictions clearly do "relat[e] to a controlled substance (as defined in [the federal drug schedules])," just as § 1227(a)(2)(B)(i) requires. Accordingly, we deny Swaby's petition for review of the BIA's decision that Swaby had committed a removable offense.[5]

---

[4] Swaby does cite to two Massachusetts cases that construe that state's controlled substances criminal statute and that he contends, by analogy, support his view that this Rhode Island controlled substances law is not divisible with respect to the type of controlled substance. But, in addition to the fact that those cases do not construe Rhode Island law, they also establish only that a defendant need not know the particular identity of the controlled substance. They do not address whether the government must prove the identity of the particular controlled substance. Commonwealth v. DePalma, 673 N.E.2d 882, 884 (Mass. App. Ct. 1996); Commonwealth v. Rodriguez, 614 N.E.2d 649, 653 (Mass. 1993). And other Massachusetts cases appear to establish that the government actually must do so. See Commonwealth v. Vasquez, 923 N.E.2d 524, 534 (Mass. 2010); Commonwealth v. McGilvery, 908 N.E.2d 783, 787 (Mass. 2009).

[5] Although the IJ originally denied Swaby's motion to terminate proceedings based on its application of the modified categorical approach, the BIA did not affirm the IJ's order on that ground. Ordinarily, we would not uphold an agency's decision on grounds that the agency did not itself supply. See SEC v. Chenery Corp., 332 U.S. 194 (1947). We do so here, however,

- 14 -

Swaby next challenges the denial of his motion for cancellation of removal, a discretionary form of relief that may be granted when positive factors weighing against removal outweigh negative factors that counsel in favor of removal. See 8 U.S.C. § 1229b(a); Matter of C-V-T-, 22 I. & N. Dec. 7, 10-12 (BIA 1998). Swaby recognizes that "[c]ancellation of removal is a form of discretionary relief over which we generally have no appellate jurisdiction," unless a petitioner raises "at least a colorable constitutional claim or question of law." Elysee v. Gonzales, 437 F.3d 221, 223 (1st Cir. 2006). He thus seeks to frame his challenges as ones that identify a legal error rather than a questionable exercise of discretion.

We review questions of law de novo, though we accord "some deference to the BIA's interpretation of the statutes and regulations that come within its purview." Mendez-Barrera v. Holder, 602 F.3d 21, 24 (1st Cir. 2010). And when the BIA adopts and affirms an IJ's decision, as the BIA did here, we review the IJ's decision "to the extent of the adoption, and the BIA's decision as to [any] additional ground." Sunoto v. Gonzales, 504

_____

because the parties agree, that no purpose would be served by remanding this case to the agency to apply the modified categorical approach given that, as a matter of law, the modified categorical approach dictates the outcome, just as the IJ had ruled. See NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969) (remand not required where it would be an "idle and useless formality").

F.3d 56, 59-60 (1st Cir. 2007) (quoting <u>Berrio-Barrera</u> v. <u>Gonzales</u>, 460 F.3d 163, 167 (1st Cir. 2006)).

With that background in place, we turn now to the first of Swaby's challenges. Swaby contends that the IJ erred as a matter of law in balancing the positive and negative factors in this case by impermissibly considering as a negative factor the fact that Swaby's five children have five different mothers. Swaby contends in this regard that, under <u>Matter of C-V-T-</u>, the only negative factors an IJ may consider are the noncitizen's immigration and criminal records and matters pertaining to them.

In fact, <u>Matter of C-V-T-</u> is not so strict. 22 I. & N. Dec. at 11 (explaining that noncitizens' immigration and criminal records are "[a]mong the factors deemed adverse" to them, but so too is "the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country"). But, of more significance here, the IJ recognized that the fact that Swaby has five children in the United States was a <u>positive</u> factor. The IJ thus referenced the fact that Swaby's children had different mothers not as a negative factor but only in the course of evaluating the strength of Swaby's ties to those children. The evaluation of the strength of those ties falls well within the IJ's discretion to assess the strength of a positive factor. There is thus no basis in the record for Swaby's assertion of legal error.

- 16 -

Swaby next contends that the IJ erred by "entirely fail[ing] to consider" the hardship that would befall two of Swaby's children if Swaby were removed. This contention fails to present a colorable legal challenge over which we have jurisdiction. For even if a complete failure to consider such hardship constitutes a legal error, cf. Elysee, 437 F.3d at 223-24 (holding that a petition for review based on "the IJ's supposed 'complete[] disregard[]' for the hardships that will be faced by [petitioner's] children if he is deported" raised no question of law); Mele v. Lynch, 798 F.3d 30, 32 (1st Cir. 2015) ("[W]here Congress has enacted a jurisdictional wall, an alien cannot scale it simply 'by relitigat[ing] whether the factors relevant to [the] discretionary relief were appropriately weighed by the IJ and the BIA.'" (quoting Urizar-Carrascoza v. Holder, 727 F.3d 27, 32 (1st Cir. 2013) (modifications in original)), there is no colorable argument that such a failure occurred here.

The record reveals that the IJ identified hardship to Swaby's family as a positive factor and considered all of the exhibits that Swaby submitted, including Swaby's affidavit and affidavits from family members and friends, as well as Swaby's testimony, noting that Swaby had expressed "particular concern" about the hardship that would befall one of Swaby's children. The IJ then stated that it had weighed the positive factors against the negative factors. No more was required. See Telyatitskiy v.

- 17 -

Holder, 628 F.3d 628, 631 (1st Cir. 2011) (holding that where "[t]he record reveals that the IJ considered the totality of the evidence presented," the IJ does not err "merely by failing to address specifically each piece of evidence the petitioner presented").  For these reasons, Swaby's petition for review of the IJ's denial of Swaby's request for cancellation of removal is dismissed.

## V.

In light of the foregoing, the petition for review is **denied** in part and **dismissed** in part.