**NOT RECOMMENDED FOR PUBLICATION**
File Name: 19a0104n.06

**No. 18-3537**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 05, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOSE SANDOVAL HERNANDEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| WILLIAM P. BARR, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | OPINION |
| | ) | |
| | ) | |

**BEFORE:** CLAY and STRANCH, Circuit Judges; PEARSON, District Judge.[*]

**JANE B. STRANCH, Circuit Judge.** Jose Sandoval Hernandez petitions for review of a Board of Immigration Appeals (BIA) ruling that he is ineligible for cancellation of removal because he was convicted of an aggravated felony. Because Michigan's felony-firearm statute is divisible and, applying the modified categorical approach, Sandoval Hernandez was convicted of an aggravated felony, we **DENY** the petition for review.

## I. BACKGROUND

Sandoval Hernandez is a lawful permanent resident who was admitted to the United States when he was seven years old. He is now 27 years old. His father and some of his sisters are U.S. citizens; his other siblings are lawful permanent residents.

---

[*]The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

Sandoval Hernandez was indicted on three felony counts under Michigan law in 2015: (1) assault with a dangerous weapon (felonious assault), (2) carrying a concealed firearm, and (3) "felony firearm." The indictment for the felony-firearm count states that he "did carry or have in his/her possession a firearm, to wit: a pistol, at the time he/she committed or attempted to commit a felony, to wit: Assault with a Dangerous Weapon; contrary to MCL 750.227b." Sandoval Hernandez pleaded guilty to the charges of assault with a dangerous weapon and felony firearm. He was sentenced to eight days' imprisonment for the felonious assault, consecutive to two years' imprisonment for felony firearm. The concealed-weapon count was dismissed. His only prior conviction was for driving without a valid license.

Before Sandoval Hernandez was released from state prison, the Department of Homeland Security served him with a Notice to Appear. The amended Notice to Appear alleged that he was removable from the United States, despite being a lawful permanent resident, because he had been convicted of an aggravated felony—specifically, "a crime of violence . . . for which the term of imprisonment ordered [was] at least one year." The Notice to Appear also alleged that he could be deported because he had been convicted of a firearms offense.

Sandoval Hernandez admitted that he had been convicted of a firearms offense and denied that he had been convicted of an aggravated felony. He conceded that he was removable based on the firearms offense but sought cancellation of removal. Convictions for either a firearms offense or an aggravated felony would make him removable. 8 U.S.C. §§ 1227(a)(2)(A)(iii), (a)(2)(C). But, crucially, only a conviction for an aggravated felony would make him ineligible for discretionary cancellation of removal. *See* 8 U.S.C. § 1229b(a). And a conviction for a "crime of violence" is only an aggravated felony if it resulted in a "term of imprisonment [of] at least one year." 8 U.S.C. § 1101(a)(43)(F). The immigration judge determined that Sandoval Hernandez

had been convicted of "an aggravated felony crime of violence" and thus he was ineligible for cancellation of removal.

The BIA affirmed in a three-page unpublished decision. First, the BIA noted that Sandoval Hernandez's conviction for felonious assault, although for a crime of violence, was not an aggravated felony because it "did not result in the imposition of a term of imprisonment of a year or greater." Next, the BIA found that the commission or attempted commission of "the underlying felony is an element of the felony firearms offense." The BIA reasoned as follows. Because the underlying felony for Sandoval Hernandez's felony-firearm offense—felonious assault—was categorically a crime of violence, so too was his felony-firearm conviction. And because he sentenced to two years on the felony-firearm count, Sandoval Hernandez was convicted of an aggravated felony that made him "statutorily ineligible to pursue cancellation of removal."

Sandoval Hernandez filed a timely petition for review of the BIA's order.

## II. ANALYSIS

When the BIA "reviews the IJ's decision and issues a separate opinion, . . . this [c]ourt reviews the Board's decision as the final agency determination." *Kamar v. Sessions*, 875 F.3d 811, 817 (6th Cir. 2017). We do not defer "to the BIA's interpretation of a state criminal statute; that issue is reviewed de novo." *Serrato-Soto v. Holder*, 570 F.3d 686, 688 (6th Cir. 2009).

The issue presented by this case is a narrow one. Sandoval Hernandez admits that assault with a deadly weapon is a crime of violence—as he must under our binding precedent. *See United States v. Harris*, 853 F.3d 318, 321–22 (6th Cir. 2017). The Government, in turn, concedes that a defendant can be convicted of felony firearm without committing a crime of violence, making the statute overbroad. Thus, the sole issue in contention is whether the felony-firearm statute is divisible. If it is, and application of the modified categorical approach reveals that Sandoval Hernandez was convicted of an offense that has an element the commission or attempted

commision of felonious assault, we must deny the petition for review. If this statute is indivisible, on the other hand, we must grant the petition for review because the statute is overbroad.[1]

Sandoval Hernandez argues that the BIA erred in finding that the felony-firearm statute was divisible because the felony-firearm statute does not "list elements of the crime in the alternative." He instead contends that the felony-firearm statute is both indivisible and overbroad. In other words, it is not an aggravated felony because a defendant "can be convicted under the felony firearm statute without committing a crime of violence." The Government responds that this statute "contains a divisible 'felony' element"; because "a jury must find the underlying felony's elements beyond a reasonable doubt . . . the underlying felony's elements are also elements of a felony-firearm conviction." Thus, it argues, Sandoval Hernandez was convicted of an aggravated felony because the underlying felony, assault with a deadly weapon, is categorically a crime of violence.

As relevant here, a person commits the offense of felony firearm when he or she "carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony," except for certain offenses relating to gun possession, carrying, sale, or alteration. Mich Comp.

---

[1] Because Sandoval Hernandez did not raise the issue, we do not reach the question of whether he has a *Padilla* claim for defense counsel's failure to negotiate a plea to count two of the indictment (concealed carry of a firearm) instead of count three (felony firearm). But, under our precedent, he can demonstrate *Strickland* prejudice "by showing that he would have negotiated a plea deal that did not carry adverse immigration consequences." *Rodriguez-Penton v. United States*, 905 F.3d 481, 488 (6th Cir. 2018). And given that the Michigan concealed-firearms statute does not include an antique weapons exception, this offense is likely not an aggravated felony. *See* Mich. Comp. Laws Ann. §§ 750.222(e)–(f), 750.227(2); *United States v. Aguilera-Rios*, 769 F.3d 626, 634–37 (9th Cir. 2014) (holding that state statutes "that allow conviction for offenses using antique firearms" are not categorically firearms aggravated felonies). We further note that the concealed carry of a firearm count could be punished by two years' imprisonment, the same term of imprisonment imposed for the felony-firearm count. *See* Mich. Comp. Laws Ann. § 750.27(3) (providing for a punishment of up to five years). Thus, because Sandoval Hernandez could have served the same prison sentence had he instead pleaded guilty to the concealed-carry count, there is no reason readily apparent from the record why the prosecution would have preferred that he plead guilty to the felony-firearm count rather than the concealed-carry count. If defense counsel did not consider the immigration consequences of a conviction during plea bargaining or try to negotiate a plea that would not result in his client's deportation, Sandoval Hernandez may have a colorable *Padilla* claim.

Laws Ann. § 750.227b(1). There are three elements to this crime: (1) carrying or possessing a firearm (2) at the time of (3) the commission or attempted commission of another felony. The question, then, is whether the commission of a felony element is divisible by the underlying crime or whether, instead, commission of the underlying crime is merely a means to satisfy this element.

### A. Elements versus Means

The Supreme Court clarified the distinction between "elements" and "means" in *Mathis v. United States*, 136 S. Ct. 2243 (2016). An element of a crime is something that must be proven for conviction. *Id.* at 2249. Thus, if commission or attempted commission of a specific underlying felony is an element of felony firearm, then the jury must find or the defendant must admit that he committed or attempted to commit that *particular* felony. *See id.* On the other hand, if the underlying felony is merely a means to satisfy an element—*i.e.*, a "factual way[] of committing some component of the offense"—then "a jury need not find (or a defendant admit)" the commission of any particular underlying crime. *Id.* To take an example from *Mathis*, "suppose a statute requires use of a 'deadly weapon' as an element of a crime and further provides that the use of a 'knife, gun, bat, or similar weapons would all qualify.'" *Id.* These listed weapons are means, not elements, because "[a] jury could convict even if some jurors concluded that a defendant used a knife while other concluded that he used a gun, so long as all agreed that the defendant used a deadly weapon." *Id.* (alterations, citations, and internal quotation marks omitted).

Determining whether something is an element or a means can be tricky. In some cases, decisional law may provide a clear answer. For example, in *Mathis*, "the State Supreme Court held" that the "listed premises in Iowa's burglary law . . . are alternative methods of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle." *Id.* at 2256 (alterations, citations, and internal quotation marks omitted).

Thus, the premises listed in the statute were means, not elements. "Likewise, the statute on its face may resolve the issue. If statutory alternatives carry different punishment, then under *Apprendi* they must be elements." *Id.* But these sources will not always answer the question.

"[I]f state law fails to provide clear answers," federal courts can look at "the record of a prior conviction itself. . . . [S]uch a peek at the record documents is for the sole and limited purpose of determining whether the listed items are elements of the offense. *Id.* at 2256–57 (alterations, citations, and internal quotation marks omitted). The relevance of these documents is that they can "reveal what the prosecutor has to (and does not have to) demonstrate to prevail." *Id.* at 2257 (citing *Descamps v. United States*, 570 U.S. 254, 272 (2013)). For instance, "an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each of which goes toward a separate crime." *Id.*

### B. State Caselaw

The Government argues that, in this case, state law makes clear that the commission of a specific underlying felony is an element of felony firearm. The Government principally relies on *People v. Lewis*, a case in which the defendants sought to overturn their felony-firearm convictions by "asserting that since the jury acquitted them of the underlying felonies . . . , they necessarily found that an element of the offense of felony-firearm had not been committed." 330 N.W.2d 16, 17 (Mich. 1982). The Michigan Supreme Court rejected this argument, stating that a "conviction of felony-firearm may be read as an implicit finding that the defendant did commit the felony," and that the inconsistent verdict could be explained by jury leniency or compromise. *Id.* at 19–20. The court held that conviction of an underlying felony was not required for a felony-firearm conviction, only the commission or attempted commission of an underlying felony. *Id.* at 21.

*Lewis*, however, cannot bear the weight the Government places on it. It stands for the proposition—evident from the statute—that an individual must commit or attempt to commit another felony to be convicted of felony firearm. But that does not mean that the specific underlying felony is an element of the crime. *Lewis* does not foreclose the possibility that a jury could convict an individual of felony firearm without agreeing on the underlying felony. If a jury could find someone guilty of felony firearm even though some jurors think that the defendant committed robbery and other jurors think that he only sold drugs, then the commission of the underlying felony would be a means, not an element of the crime. *See Mathis*, 136 S. Ct. at 2249.

The Government also relies on *People v. Burgess*, 353 N.W.2d 444 (Mich. 1984), in which the Michigan Supreme Court reversed a felony-firearm conviction for failure to give a jury charge on intoxication. The court held that this was reversible error because, although intoxication is not a defense to felony firearm, "it is a defense to the underlying felony of assault with a dangerous weapon." *Id.* at 447. *Burgess* suggests that the specific underlying offense is an element of felony firearm but does not definitively answer the question because felonious assault was the only underlying felony that was charged in that case. Thus, if Burgess did not commit felonious assault because he was too intoxicated to form a specific intent, he could not have committed felony firearm either. But that does not answer the relevant question—whether the failure to give an intoxication charge would require reversal of the felony-firearm conviction if there were other underlying felonies, to which intoxication is not a defense, that the defendant may have committed.

Most helpful to the Government is an argument it barely develops. The Michigan Supreme Court has held that "where a defendant has committed separate felonies during a single transaction, he may be convicted of more than one count of [felony firearm]." *People v. Morton*, 377 N.W.2d 798, 798, 801 (Mich. 1985). The court explained, "[w]e believe it clear that the Legislature

intended . . . that every felony committed by a person possessing a firearm result in a felony-firearm conviction." *Id.* at 801; *accord People v. Mitchell*, 575 N.W.2d 283, 285 (Mich. 1998). The logical implication is that the indictment must charge—and the prosecution must prove—the underlying felony for each felony-firearm count to avoid multiplicity or raising double-jeopardy concerns with multiple felony-firearm convictions. This logic entails the conclusion that the commission of a *particular* felony is an element of the offense. *See United States v. Martinez-Lopez*, 864 F.3d 1034, 1040 (9th Cir. 2017) (en banc) (holding that the "controlled substance" element of a drug-trafficking law was divisible by the specific substance because "defendants are routinely subjected to multiple convictions under a single statute for a single act as it relates to multiple controlled substances" and "such convictions are recognized as separate crimes by the California Supreme Court").

## C. Review of Record Documents

The categorical approach demands certainty. *See Mathis*, 136 S. Ct. at 2257 (noting "*Taylor*'s demand for certainty"). To dispel any remaining doubt about whether the felony-firearm statute is divisible, we take "a peek at the record documents . . . for the sole and limited purpose" of determining the elements of conviction. *Id.* at 2256 (alterations, citation, and internal quotation marks omitted). The indictment alleges that Sandoval Hernandez "did carry or have in his/her possession a firearm . . . at the time he/she committed or attempted to commit a felony, to wit: Assault with a Dangerous Weapon." "[B]y referencing one alternative term to the exclusion of all others," the indictment "indicate[s]" that the underlying felony—assault with a deadly weapon—is an element of the crime. *Mathis*, 136 S. Ct. at 2257.

Although Sandoval Hernandez pleaded guilty rather than going to trial, Michigan's Model Criminal Jury Instructions also support this conclusion. The felony-firearm instruction requires

that the prosecution prove that a defendant committed or attempted to commit a specific underlying crime, not just that he or she committed or attempted to commit a generic felony. It provides:

> (1) The defendant is also charged with the separate crime of possessing a firearm at the time [he/she] committed [or attempted to commit] the crime of _____.

> (2) To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

> (3) First, that the defendant committed [or attempted to commit] the crime of _____, which has been defined for you. It is not necessary, however, that the defendant be convicted of that crime.

> (4) Second, that at the time the defendant committed [or attempted to commit] that crime [he/she] knowingly carried or possessed a firearm.

Mich. Crim. JI 11.34. The blank spaces indicate that the prosecution is required to prove that a defendant committed a specific underlying felony to obtain a felony-firearm conviction. That makes commission of the underlying felony an element. *See Mathis*, 136 S. Ct. at 2257; *Martinez-Lopez*, 864 F.3d at 1040–41 (holding that, under the analysis required by *Mathis*, the controlled-substance element of a state drug-trafficking law was divisible by the specific substance and thus the statute was divisible); *Swaby v. Yates*, 847 F.3d 62, 67–69 (1st Cir. 2017) (same).

Because the felony-firearm statute is divisible, we employ the "modified categorical approach" to determine the elements of conviction. *United States v. Covington*, 738 F.3d 759, 762–63 (6th Cir. 2014). But we "use the modified approach only to determine which alternative element in a divisible statute formed the basis of the defendant's conviction." *Descamps*, 570 U.S. at 278. We do not use it "to substitute . . . a facts-based inquiry for [the] elements-based one" required by the categorical approach. *Id.* "[T]he modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction." *Mathis*, 136 S. Ct. at 2253.

Looking once again at the record documents, the indictment makes clear that Sandoval Hernandez was convicted of possessing a firearm while committing assault with a deadly weapon. And this court has held that felonious assault is categorically a crime of violence. *See Harris*, 853 F.3d at 321–22.[2] Thus, applying the modified categorical approach, Sandoval Hernandez's conviction for felony firearm was a crime of violence. Because he was sentenced to more than a year of imprisonment, this conviction is an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(F).

## III. CONCLUSION

For the foregoing reasons, Sandoval Hernandez's felony-firearm conviction is a conviction for an aggravated felony. He is therefore statutorily ineligible for cancellation of removal. Though Sandoval Hernandez has been living in this country since he was seven years old, he will now be deported and separated from his family, all of whom are lawful permanent residents or United States citizens. Because this result is mandated by law, we **DENY** the petition for review.

---

[2] Although *Harris* dealt with the Sentencing Guidelines, the definition of crime of violence used in immigration law, taken from 18 U.S.C. § 16, is broader than that of the Guidelines. *Compare* 18 U.S.C. § 16(a) (defining "crime of violence" as "an offense that has an element the use, attempted use, or threatened use of physical force against the person or property of another"), *with* USSG § 4B1.2(a) (defining "crime of violence" as any offense, punishable by more than a year of imprisonment, that "has an element the use, attempted use, or threatened use of physical force against the person of another"). Thus, if an offense is a crime of violence under the Guidelines, like felonious assault, it is a crime of violence for aggravated-felony purposes (but not the other way around). *See United States v. Camp*, 903 F.3d 594, 600 (6th Cir. 2018).