**STATE of Maine**

**v.**

**Leo R. LAVIGNE.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 18, 1991.

Decided April 3, 1991.

---

Michael Cantara, Dist. Atty., Brian N. Roberts, Asst. Dist. Atty., Alfred, for plaintiff.

James Boulos, Biddeford, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, CLIFFORD, COLLINS and BRODY, JJ.

BRODY, Justice.

Defendant Leo R. Lavigne appeals from two judgments entered in the Superior Court (York County, *Cole, J.*) after he was convicted of receiving stolen property, a violation of 17–A M.R.S.A. § 359 (1983), and trafficking in cocaine, a violation of 17–A M.R.S.A. § 1103(1) & (2)(A) (Supp. 1990). Lavigne contends that the evidence was insufficient to support his convictions. We disagree and affirm the judgments.

Lavigne pleaded not guilty to each of three counts of an indictment handed down on April 6, 1989.[1] At a jury-waived trial held on April 26–27, 1990, Patrick Doherty, the State's principal witness, testified that he had routinely sold stolen goods to Lavigne at his home in South Berwick in February of 1989. Doherty also testified that he was at Lavigne's home on several occasions in February of 1989 when he witnessed what he believed to be drug transactions. It was information provided by Doherty that led to a search warrant for Lavigne's home pursuant to which items from several different burglaries and drugs and drug paraphernalia were discovered. At the close of the State's evidence, Lavigne unsuccessfully moved for a judgment of acquittal on all three counts. At the close of all the evidence, the court found Lavigne guilty as charged.

On appeal, Lavigne first argues that the evidence was insufficient to establish that the value of the stolen property was greater than $1,000 and, consequently, was insufficient to support his conviction for Class C theft. Receiving stolen property is a Class C offense if the value of the property is more than $1,000 but not more than $5,000. 17–A M.R.S.A. § 362(3)(A) (1983). The standard for assessing the value of stolen property for purposes of determining the grade of the offense of receiving it is fair market value. *State v. Thibeault*, 390 A.2d 1095, 1102 (Me.1978). Fair market value "means the market value of the property ... at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property ... within a reasonable time after the crime." 17–A M.R.S.A. § 352(5)(A) (1983). The value of property

---

1. Lavigne does not appeal from his conviction on the third count, trafficking in marijuana, a violation of 17–A M.R.S.A. § 1103(1) & (2)(C) (1983 & Supp.1990).

stolen from different sources as part of a common scheme may be aggregated in order to prove the grade of theft by receiving. *Id.* § 352(5)(E); *State v. Salley,* 514 A.2d 465, 468 (Me.1986).

There was ample evidence before the court to support Lavigne's conviction for Class C theft. By their testimony, the victims of the burglaries placed the value of their property between $3,013 and $3,338. Robert and Natalie Anderson testified that the replacement cost of their stereo receiver, tape deck, turntable, pistol, and camera tripod, all purchased in the late 1970's or early 1980's, was between $1,550 and $1,800. Jack Schoff testified that he paid approximately $159 for his three-year-old CB radio. William Doherty testified that he paid $99 to purchase his dual-cassette tape deck in 1987. Sheldon Parshley testified that he had the value of his four-year-old camera and zoom lens, three-year-old television set, and one-year-old handheld scanner estimated at between $705 and $780. Finally, Lynn West testified that the replacement cost of her programmable camera received as a gift in 1985 or 1986 was about $500.

Given the owners' testimony as to purchase and replacement costs and age, and having access to the particular property or photographs of the property, the court could rationally find that the value of the stolen property was beyond a reasonable doubt "well in excess of a thousand dollars." On this evidence, contrary to Lavigne's contention, the court's assessment cannot be attacked as speculative. *See State v. Thibeault,* 390 A.2d at 1103 n. 6.

■ Lavigne also argues that the evidence was insufficient to support his conviction for trafficking in cocaine. In particular, he contends that the court's admitted inability to find that he trafficked in cocaine on any particular date with any particular individual must be fatal to its finding of guilt beyond a reasonable doubt. "A person is guilty of unlawful trafficking in a scheduled drug if he intentionally or knowingly trafficks in what he knows or believes to be any scheduled drug, and which is, in fact, a scheduled drug." 17–A M.R.S.A. § 1103(1) (Supp.1990). Trafficking is defined as selling, bartering, trading, exchanging, or otherwise furnishing for consideration, or possessing with the intent to do so. *Id.* § 1101(17)(C) & (D) (1983).[2]

There was ample evidence before the court to support Lavigne's conviction on this count. On March 2, 1989, the police searched Lavigne's house and discovered a baggie with .13 grams of a white powder containing cocaine in an upstairs bedroom, and another baggie with 5.0 grams of a white powder containing cocaine in the basement. They found a plate, razor blade, and straw with cocaine residue in a microwave oven in the kitchen, and a mirror and razor blade with cocaine residue in a desk on the first floor. A set of scales calibrated to measure grams along with a package of clear plastic baggies and a spoon, all with cocaine residue, were discovered in the top drawer of a work bench in a basement utility room. The police also found ledgers tucked into the stringers behind a false ceiling in the basement. Two officers with extensive training in detection of drug transactions testified that, in their opinion, the ledgers could be drug ledgers. One of the ledgers contained the date February 4, 1989, and a corresponding figure of $1,530.

In addition, Patrick Doherty, the prosecution's chief witness, testified that he was at Lavigne's home on several occasions in February of 1989 when he witnessed what he believed to be drug transactions. On one occasion, he testified, he saw Lavigne and an unknown person enter the basement utility room where the scales were kept and observed a white powder on the scales when they exited. Doherty also testified that he witnessed Lavigne enter the utility room with other people on at least five different occasions. The court found Doherty's testimony convincing.

**2.** Trafficking is a Class B crime if the scheduled drug is cocaine. 17–A M.R.S.A. §§ 1102(1)(F) & 1103(2)(A) (Supp.1990).

Based on this evidence, viewed in the light most favorable to the State, the court could rationally find beyond a reasonable doubt every element of the offense of trafficking in cocaine. *See State v. Barry,* 495 A.2d 825, 826 (Me.1985). The court's inability to find that Lavigne trafficked in cocaine on a given date with a given individual is not fatal to his conviction because neither a particular date nor a particular individual is an essential element of the crime. A conviction is no less conclusive because it is based on circumstantial evidence. *State v. Ingalls,* 544 A.2d 1272, 1276 (Me.1988).

The entry is:

Judgments affirmed.

All concurring.