# United States Court of Appeals
## For the First Circuit

No. 23-1842

UNITED STATES,

Appellee,

v.

SHAIQUAN MORAN-STENSON, a/k/a Shaiquan Moran-Stetson, a/k/a
Fabio, a/k/a Q,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Gelpí, Thompson, and Montecalvo,
Circuit Judges.

David M. Rothstein, with whom Rothstein Law LLC was on brief,
for appellant.
Brian S. Kleinbord, Assistant United States Attorney, with
whom Darcie N. McElwee, United States Attorney, was on brief, for
appellee.

August 22, 2024

**MONTECALVO, Circuit Judge**. For sentencing purposes, the United States Sentencing Guidelines ("the guidelines") require imposing an enhanced base offense level where the defendant unlawfully possessed a firearm or ammunition after "sustaining one felony conviction of . . . a controlled substance offense." U.S. Sent'g Guidelines Manual § 2K2.1(a)(4)(A) (U.S. Sent'g Comm'n 2023) [hereinafter § 2K2.1(a)(4)(A)].

In May 2023, defendant-appellant Shaiquan Moran-Stenson pled guilty to unlawfully possessing ammunition as a person previously convicted of a felony in violation of 18 U.S.C. § 922(g)(1). Over Moran-Stenson's objections, the district court agreed with the government that Moran-Stenson should be assigned an enhanced base offense level under § 2K2.1(a)(4)(A) because he committed a predicate drug trafficking offense under Maine law.

On appeal, Moran-Stenson argues that the district court erred in applying the modified categorical approach to conclude that his Maine drug trafficking conviction constituted a "controlled substance offense" to warrant a sentencing enhancement. For the reasons explained below, we affirm the district court's application of the sentencing enhancement.

## I. Background

We draw the facts related to Moran-Stenson's sentencing from the presentence investigation report ("PSR") and the relevant

portions of the sentencing record.  United States v. Diaz-Serrano, 77 F.4th 41, 44 (1st Cir. 2023).

In 2016, Moran-Stenson was convicted of a felony for unlawfully trafficking cocaine base in violation of Maine's drug trafficking statute, Me. Rev. Stat. Ann. tit. 17-A, § 1103(1-A)(A) ("§ 1103").  Section 1103 provides that:

> [A] person is guilty of unlawful trafficking in a scheduled drug if the person intentionally or knowingly trafficks in what the person knows or believes to be a scheduled drug, which is in fact a scheduled drug, and the drug is: (A) A schedule W drug.

As is undisputed here, Maine classifies cocaine base as a schedule W drug (see Me. Rev. Stat. Ann. tit. 17-A, §§ 1101(25)(B)(3), 1102(1)(F)), and cocaine base is a federally criminalized drug under the Controlled Substances Act (see 21 U.S.C. § 812, Schedule II, (a)(4)).

On January 5, 2022, Moran-Stenson was arrested for his involvement in a shooting in Lewiston, Maine.  At the time of the shooting, Moran-Stenson was serving a three-year term of federal supervised release related to a crime he committed in the Western District of New York.  A grand jury indicted Moran-Stenson for violating 18 U.S.C. § 922(g)(1), the statute barring persons convicted of felonies from possessing firearms and ammunition. And on May 16, 2023, Moran-Stenson pled guilty to the § 922(g)(1) charge.

Prior to sentencing, the U.S. Probation Office ("probation") filed a PSR laying out the guidelines range for Moran-Stenson's offense. Pursuant to § 2K2.1(a)(4)(A), a defendant receives an enhanced based offense level for violating § 922(g)(1) if they "committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a controlled substance offense." As relevant here, the guidelines define a "controlled substance offense" as a federal or state crime "punishable by imprisonment for a term exceeding one year, that [] prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S. Sent'g Guidelines Manual § 4B1.2(b)(1) (U.S. Sent'g Comm'n 2023).

In the PSR, probation found that Moran-Stenson's Maine drug trafficking conviction constituted a "controlled substance offense" and assigned him an enhanced base offense level of twenty under § 2K2.1(a)(4)(A). Moran-Stenson objected to the application of the enhancement, but probation retained its recommendation that he receive a base offense level of twenty. With an undisputed criminal history category of VI, Moran-Stenson's sentencing guidelines range was ultimately calculated to be seventy-seven to ninety-six months (based on a total offense level of twenty-one, which included an enhancement for possessing the firearm in

connection with a felony offense and a reduction for acceptance of responsibility).

The district court held a sentencing hearing on October 11, 2023. At the hearing, Moran-Stenson's counsel reiterated his objection to the PSR's base offense level determination, insisting that Moran-Stenson's Maine drug trafficking conviction did not constitute a predicate controlled substance offense triggering the § 2K2.1(a)(4)(A) enhancement. Moran-Stenson's counsel explained that under the categorical approach, because some schedule W drugs criminalized under Maine law are not prohibited by the federal Controlled Substances Act, Moran-Stenson's Maine drug trafficking conviction was not a proper categorical "match" to enhance his base offense level. Accordingly, Moran-Stenson urged the district court to apply the categorical approach and made clear that, because Maine's drug law is broader than federal law, his prior conviction could not be a predicate "controlled substance offense."

In response, and as we will explain in greater detail below, the government argued that the "scheduled drugs" element of the Maine drug trafficking statute is "divisible." As such, the government insisted that the divisible nature of the statute allowed the district court to use the modified categorical approach to evaluate the specific type of drug that Moran-Stenson trafficked. And if the court applied the modified categorical

approach, it could look to the underlying Maine indictment to confirm that Moran-Stenson was convicted of trafficking cocaine base -- a drug criminalized under both Maine and federal law. Therefore, Moran-Stenson's § 1103 conviction would constitute a proper match to trigger the sentencing enhancement.

The government acknowledged, however, that this circuit's prior decisions on § 1103's divisibility focused solely on the "trafficking" element of that statute. Nonetheless, the government maintained that both the "trafficking" and "scheduled drugs" components of § 1103 are divisible. And it stressed that the specific type of drug being trafficked is a necessary, independent element of a drug trafficking offense under Maine law.

The district court agreed with the government and probation that Moran-Stenson's § 1103 conviction was a predicate "controlled substance offense." The court overruled Moran-Stenson's objection to the PSR's application of § 2K2.1(a)(4)(A) and adopted the PSR's enhanced base offense level of twenty. After hearing the parties' sentencing arguments, the court sentenced Moran-Stenson to seventy-seven months' imprisonment for the § 922(g)(1) offense -- the bottom of the applicable guidelines range -- followed by three years of supervised release.[1] Moran-Stenson then filed this timely appeal.

_____

[1] Moran-Stenson was also sentenced to eighteen months' imprisonment for violating his federal supervised release by

- 6 -

## II. Discussion

"The Government bears the burden of establishing that a prior conviction qualifies as a predicate offense for sentencing enhancement purposes." United States v. Dávila-Félix, 667 F.3d 47, 55 (1st Cir. 2011). And we review the issue of whether a prior conviction falls under the guidelines' enhancements de novo. United States v. Abdulaziz, 998 F.3d 519, 523 (1st Cir. 2021).

Here, Moran-Stenson argues that the district court erred in applying the modified categorical approach to conclude that his drug trafficking conviction under Maine law was a predicate "controlled substance offense" under § 2K2.1(a)(4)(A). First, Moran-Stenson emphasizes that § 1103 is not a categorical match to the federal Controlled Substances Act; therefore, under the categorical approach, the district court could not have applied the sentencing enhancement. Second, Moran-Stenson contends that the "scheduled drugs" component of § 1103 is not a divisible element. And because the modified categorical approach can only be deployed where a statutory component is an element of an offense (and thus divisible), the district court should not have reviewed his state court indictment to determine the means by which he committed the offense -- specifically, by trafficking cocaine base.

---

committing the § 922(g)(1) offense, but he has not challenged any other aspects of his new-offense or revocation sentencing.

We begin by outlining the categorical and modified categorical approach frameworks, with particular focus on the appropriate order of operations in the modified categorical approach analysis.

## A. The Categorical Approach

At the outset, before looking "beyond the mere fact of [the state court] conviction," a court must use the categorical approach to determine "whether all of the conduct covered by the [state] statute categorically" matches the elements of the federal offense to serve as a predicate act. United States v. Faust, 853 F.3d 39, 51 (1st Cir. 2017) (quoting Taylor v. United States, 495 U.S. 575, 602 (1990)). For a prior conviction to qualify as a predicate act, the categorical approach mandates that the elements of a defendant's state law conviction align with the "generic version[]" of the crime under federal law. Mathis v. United States, 579 U.S. 500, 503 (2016). Under the categorical approach, "[s]entencing courts may 'look only to the statutory definitions' -- i.e., the elements -- of a defendant's prior offenses, and not 'to the particular facts underlying those convictions.'" Descamps v. United States, 570 U.S. 254, 261 (2013) (quoting Taylor, 495 U.S. at 600). "In other words, without regard to the specific facts of each defendant's offense, we compare the elements of the crime for which the defendant was previously convicted with Congress's definition of the type of crime that may

serve as a predicate offense." United States v. Fish, 758 F.3d 1, 5 (1st Cir. 2014).

Where the state statute covers the same or an even narrower class of conduct than the generic offense, the state conviction "will always count as a predicate" for federal sentencing purposes. Faust, 853 F.3d at 51; accord Mathis, 579 U.S. at 519. But when the state law "sweeps more broadly than the generic crime, a conviction under that law cannot count as" a categorical match for a predicate offense. Descamps, 570 U.S. at 261.

## B. The Modified Categorical Approach

Next, if the state statute is not a categorical match, the court may evaluate whether the modified categorical approach can be deployed. The modified categorical approach permits a sentencing court to "look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." Mathis, 579 U.S. at 505-06. But "the modified [categorical] approach serves -- and serves solely -- as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque." Id. at 513 (emphasis added). Importantly, the modified categorical approach can never "be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad

crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense." Id. at 513-14 (emphasis added).

The distinction between elements and means is essential to evaluating the propriety of applying the modified categorical approach. "The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means." Id. at 517.

The elements of a crime "are the 'constituent parts' of a crime's legal definition -- the things the 'prosecution must prove to sustain a conviction.'" Id. at 504 (quoting Black's Law Dictionary 634 (10th ed. 2014)). For example, "a burglary statute (otherwise conforming to the generic crime) that prohibits 'entry of an automobile as well as a building'" constitutes a statute listing "alternative elements." Descamps, 570 U.S. at 261. Because "[o]ne of those alternatives (a building) corresponds to an element in generic burglary, whereas the other (an automobile) does not[,] . . . a later sentencing court cannot tell, without reviewing something more, if the defendant's conviction was for the generic (building) or non-generic (automobile) form of burglary." Id. at 261-62.

Means, on the other hand, identify the possible ways "by which the offense may be committed." Swaby v. Yates, 847 F.3d 62, 67-68 (1st Cir. 2017). If, hypothetically, a statute includes

"use of a 'deadly weapon' as an element of a crime and further provides that the use of a 'knife, gun, bat, or similar weapon' would all qualify[,] . . . that kind of list merely specifies diverse means of satisfying a single element of a single crime." Mathis, 579 U.S. at 506.

When a statute lists alternative elements, the statute is divisible; the court can then proceed to use the modified categorical approach to "determine which offense the defendant" actually committed. Faust, 853 F.3d at 52. Meanwhile, if a statute merely lists alternative means, the court cannot use the modified categorical approach and must reject application of the sentencing enhancement because the state statute does not constitute a categorical match. Id.; Mathis, 579 U.S. at 513, 519.

## 1. Step 1: Assessing Whether a Statute Lists Elements or Means

In Mathis v. United States, 579 U.S. 500 (2016), the Supreme Court laid out several ways in which a court can determine whether a statute lists elements or means. First, and most straightforwardly, where "a state court decision definitively answers the question," the sentencing court must adopt that state's approach. 579 U.S. at 517. Second, "the statute on its face may resolve the issue." Id. at 518. In particular, where "statutory alternatives carry different punishments, . . . they must be elements." Id. On the other hand, "if a statutory list is drafted

- 11 -

to offer 'illustrative examples,' then it includes only a crime's means of commission."  Id. (quoting United States v. Howard, 742 F.3d 1334, 1348 (11th Cir. 2014)).  Third, "if state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself."  Id.  Accordingly, the court may consult record documents like the "indictment and jury instructions" to assess whether "the statute contains a list of elements" based on how the crime was charged and tried.  Id. at 519.

## 2. Step 2: Applying the Modified Categorical Approach to a Divisible Statute

If the statute is divisible, meaning that "it sets forth one or more elements of a particular offense in the alternative," the court may apply the modified categorical approach to determine whether the defendant's prior conviction constitutes a predicate offense.  Fish, 758 F.3d at 6.

"[T]he modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction."  Descamps, 570 U.S. at 257.  These documents are often referred to as "Shepard documents," named for the Supreme Court's decision in Shepard v. United States, 544 U.S. 13 (2005), in which it identified the limited record

- 12 -

documents a court can evaluate under the modified categorical approach.

But again, the "modified categorical approach merely assists the sentencing court in identifying the defendant's crime of conviction," and does not "authorize[] the court to try to discern what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct." Descamps, 570 U.S. at 269.

## C. Whether the "Scheduled Drugs" Component of § 1103 Is Divisible

The government does not refute Moran-Stenson's contention that § 1103 is not a categorical match for a "controlled substance offense" under § 2K2.1(a)(4)(A) because § 1103 proscribes trafficking of certain drugs not criminalized by the federal Controlled Substances Act. See Abdulaziz, 998 F.3d at 522, 531 (concluding that a Massachusetts law criminalizing trafficking of "marihuana," which included "hemp," was not a categorical match because the federal Controlled Substances Act did not criminalize hemp at the time the defendant was sentenced). And if § 1103's alternatively listed drugs (identified in Maine's drug schedule W, Me. Rev. Stat. Ann. tit. 17-A, § 1102(1)) are means of committing a drug trafficking offense rather than elements, the district court wrongly applied the modified categorical approach, and it should not have enhanced Moran-Stenson's sentence under § 2K2.1(a)(4)(A). See Faust, 853

- 13 -

F.3d at 52. So, we must first assess whether the "scheduled drugs" component of § 1103 lists elements or means of the offense.

Section 1103, which criminalizes "[u]nlawful trafficking in scheduled drugs," contains two main components: "trafficking" and "scheduled drugs." The "trafficking" portion of § 1103 requires demonstrating that the defendant "intentionally or knowingly traffick[ed] in" a scheduled drug. Me. Rev. Stat. Ann. tit. 17-A, § 1103(1-A). In United States v. Mohamed, 920 F.3d 94 (1st Cir. 2019), we addressed the divisibility of § 1103's "trafficking" component in context of the "controlled substance offense" enhancement under § 2K2.1(a)(4)(A). There, as to the "trafficking" component, we determined that "[t]he Maine trafficking statute . . . is divisible because there are a number of distinct ways to 'traffick.'" Id. at 101.

In particular, a separate statutory provision defines "traffick" in "multiple alternative ways," and § 1103 itself "allows a permissible inference regarding trafficking, based on the quantity of particular drugs possessed by a defendant." Id. at 99-100 (first citing Me. Rev. Stat. Ann. tit. 17-A, § 1101(17); and then citing id. § 1103(3)). We held that because § 1103's "trafficking" component lists alternative elements of the offense, the modified categorical approach could be used to assess how the defendant "trafficked" the drugs at issue. Id. at 102-03.

But Mohamed did not address the divisibility of § 1103's "scheduled drugs" component. The "scheduled drugs" component of § 1103(1-A)(1) prohibits trafficking "what the person knows or believes to be a scheduled drug, which is in fact a scheduled drug, and the drug is: (A) A schedule W drug." In a separate statutory section, Maine lists specific "scheduled drugs" that are classified under four different drug schedule categories. See Me. Rev. Stat. Ann. tit. 17-A, §§ 1101(11), 1102. For example, alongside cocaine base, drugs like methamphetamine, heroin, and fentanyl are also classified as schedule W drugs. Id. § 1102(1)(A), (F), (I). Here, we engage in the review outlined by Mathis to determine whether the individual drugs listed in Maine's drug schedule W constitute alternative elements or means of a Maine drug trafficking offense. In other words, does § 1103's "scheduled drugs" component, like the statute's "trafficking" component, constitute a divisible element of a drug trafficking offense under Maine law?

**1. Maine State Court Decisions on § 1103's "Scheduled Drugs" Component**

We begin with the Maine Supreme Judicial Court's ("the Law Court"[2]) decisions on the "scheduled drugs" component of

---

[2] When sitting in its capacity as an appellate court, the Maine Supreme Judicial Court is known as the "Law Court." See Me. Rev. Stat. Ann. tit. 4, §§ 51, 57; Mundell v. Acadia Hosp. Corp., 92 F.4th 1, 3 n.2 (1st Cir. 2024).

§ 1103. As Moran-Stenson emphasizes, the Law Court has not directly stated that proof of the specific type of drug trafficked is an element of the offense requiring jury unanimity. Nor has the Law Court explicitly confronted whether a court can impose multiple sentences for trafficking different drugs on the same occasion. In Moran-Stenson's view, the absence of Law Court precedent on these two issues precludes finding that the "scheduled drugs" component is a divisible element. We disagree.

The Law Court has repeatedly referenced § 1103's "scheduled drugs" component as requiring proof of a specific type of drug to convict a defendant for trafficking in scheduled drugs. In State v. Barnard, 772 A.2d 852 (Me. 2001), the Law Court explained that, to convict a defendant of trafficking under § 1103,[3] "the State was required to prove that the [trafficked drug was] in fact a scheduled drug, an essential element of the crime charged." Id. at 856. And in that particular case, "[t]he State had the burden to prove to the jury beyond a reasonable doubt that the tablets were Dilaudid," a specific schedule W drug. Id. at 857. The Barnard court then described that "chemical analysis" or "other direct and circumstantial evidence can establish beyond a reasonable doubt the identity of drugs." Id.

_____

[3] The subsection of § 1103 at issue in Barnard has since been repealed, see 772 A.2d at 854 n.2, but the language of that now-repealed statutory subsection is nearly identical to § 1103(1-A).

- 16 -

Likewise, in State v. Sudsbury, 132 A.3d 863 (Me. 2016) (per curiam), the Law Court vacated the defendant's conviction for trafficking in a schedule W drug where the state failed to prove that the specific drug, Suboxone, was "explicitly named as a prohibited scheduled drug in any of the schedules established by the [Maine] Legislature." Id. at 864. The Sudsbury court reasoned that "the State was . . . required to present evidence that Suboxone is a drug that falls within one of the listed categories of schedule W drugs." Id. But "[a]t trial, however, no evidence was presented to the jury that Suboxone . . . constituted a narcotic or fell into any other category established in schedule W." Id. at 864-65.

And in State v. Lowden, 87 A.3d 694 (Me. 2014), the Law Court made clear that "[u]nlawful trafficking in scheduled drugs mandates not only that [the] person 'trafficks' in a drug, but that the drug 'is in fact a scheduled drug.'" Id. at 698 (quoting Me. Rev. Stat. Ann. tit. 17-A, § 1103(1-A)). The Lowden court also listed the elements of "unlawful trafficking in schedule W drugs pursuant to [§ 1103]" as: "the person (1) intentionally or knowingly (2) traffics in (3) what the person knows or believes to be a scheduled drug, which (4) is in fact a scheduled drug[,] and (5) the drug is a schedule W drug." Id. (emphases added).

In that vein, to satisfy the element of trafficking what "is in fact a scheduled drug," the Law Court has approved of jury

- 17 -

instructions requiring the jury to conclude beyond a reasonable doubt that the defendant trafficked a specific type of drug. See, e.g., State v. Barnard, 828 A.2d 216, 221 (Me. 2003) (upholding use of a jury instruction in a § 1103 case where "[t]aken together, these statements [from the jury instruction] informed the jurors that it was up to them to determine from all of the evidence whether the composition of the pills was proven beyond a reasonable doubt"); State v. Christianson, 404 A.2d 999, 1004 (Me. 1979) (approving jury instruction that required the jury to be "satisfied from all of the evidence in the exhibits that [the drugs] are and were in fact, Phencyclidine" by proof "beyond a reasonable doubt").

Furthermore, in State v. McLaughlin, 189 A.3d 262 (Me. 2018), the Law Court noted that "[i]n dividing various drugs into schedules, and then setting out its definitions of the drugs, including cocaine, within those schedules, the [Maine] Legislature explained that the definitions were to be used '[f]or the purposes of defining crimes under this chapter and determining the penalties therefor.'" Id. at 268 (third alteration in original) (quoting Me. Rev. Stat. Ann. tit. 17-A, § 1102).

We relied on similarly clear state-court precedent in Swaby v. Yates, 847 F.3d 62 (1st Cir. 2017), to determine that "the particular type of controlled substance listed in the state drug schedules [is] an element of an offense under" Rhode Island's drug trafficking statute. Id. at 67. To distinguish Swaby,

Moran-Stenson insists that the case is "inconsistent" with other circuit precedent and emphasizes that the modified categorical approach has no place here. Moran-Stenson seems to argue that our decision in United States v. Abdulaziz, 998 F.3d 519 (1st Cir. 2021), forecloses use of the modified categorical approach when assessing whether a sentencing enhancement applies under § 2K2.1(a)(4)(A). True, in Abdulaziz, we limited our discussion to whether Massachusetts's drug law was a categorical match to the federal Controlled Substances Act without any mention of the modified categorical approach. 998 F.3d at 522. But the critical issue in Abdulaziz and the government's arguments occasioned our categorical-approach-only analysis.

At the time of the defendant's state conviction and his later commission of the § 922(g) offense, the Massachusetts statute was a categorical match to federal law. Id. at 524. Specifically, at these earlier junctures, both Massachusetts and federal law criminalized possession with intent to distribute hemp. Id. at 522, 524. Before the defendant's sentencing for the § 922(g) charge, however, the federal Controlled Substances Act was amended to remove hemp from the federal drug schedules. Id. at 524. Consequently, by the time the defendant was sentenced, the state and federal laws were no longer a categorical match. Id. at 524, 531.

On appeal, the government exclusively focused on arguing that the state and federal statutes must be a categorical match either at the time of the state conviction or the commission of the federal offense, not at sentencing. Id. at 524. We had no reason to address the modified categorical approach because the government never argued that the modified categorical approach could be deployed.

But "[t]he Supreme Court has held that a sentencing court should use a categorical or modified categorical approach when considering sentencing enhancements based on prior offenses." Mohamed, 920 F.3d at 101 (emphasis added) (first citing Mathis, 579 U.S. at 505; and then citing Taylor, 495 U.S. at 588). And we appropriately applied the modified categorical approach in Mohamed after concluding that the "trafficking" component of § 1103 was a divisible element. Id.

In short, we do not see any purported "inconsistency." The modified categorical approach serves "as a tool" that "merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute." Descamps, 570 U.S. at 262-63. Indeed, our approach in Swaby is on all-fours with those taken by our sister circuits in carefully parsing whether a state statute is divisible by drug type before applying the modified categorical approach. See United States v. Henderson,

841 F.3d 623, 630-32 (3d Cir. 2016); <u>United States</u> v. <u>Martinez-Lopez</u>, 864 F.3d 1034, 1039-41 (9th Cir. 2017) (en banc).

From our review of Law Court precedent, we find it significant that the Law Court has consistently described the particular type of scheduled drug as an element of a § 1103 offense and noted that the state's various drug schedules correlate to different punishments.

### 2. The Text of § 1103

But we need not rely solely on Law Court decisions to conclude that the "scheduled drugs" component of § 1103 is a divisible element. In fact, "[o]ur conclusion that this state law crime is divisible by the type of drug also accords with the face of the statute." <u>Swaby</u>, 847 F.3d at 68.

Here, § 1103 criminalizes "unlawful trafficking in a scheduled drug if the person intentionally or knowingly traffics in what the person knows or believes to be a scheduled drug, which <u>is in fact a scheduled drug, and the drug is: (A) A schedule W drug</u>." Me. Rev. Stat. Ann. tit. 17-A, § 1103(1-A)(A) (emphasis added). The Law Court has not expressly decided whether a conviction can be sustained off of meager proof that the defendant trafficked a non-specified schedule W drug. As far as we can tell, such a question has never been presented to the Law Court.

But the phrase "is in fact a scheduled drug" strongly suggests that the state must prove that the defendant trafficked

- 21 -

a specific prohibited drug. And we see no way in which the state could sustain a conviction by simply proffering that the defendant trafficked a non-specified "schedule W" drug. Cf. State v. Woo, 938 A.2d 13, 16-17 (Me. 2007) (summarizing evidence related to "manufacturing" -- a form of "trafficking" under § 1103 -- that allowed "the jury [to] reasonably infer[] that [the defendant] successfully manufactured methamphetamine," meaning "the jury could have rationally found beyond a reasonable doubt that [the defendant] unlawfully trafficked in what was, in fact, a scheduled drug").

Moreover, to avoid superfluity, the phrase "is in fact a scheduled drug" must be distinguished from "and the drug is . . . [a] schedule W drug." Nonetheless, Moran-Stenson maintains that § 1103 requires only "proof that the defendant trafficked 'a schedule W drug,' rather than a specific drug." To be sure, § 1103 makes abundantly clear that the drug must actually appear on the schedule W drug list. Problematically though, Moran-Stenson's interpretation entirely ignores the preceding phrase -- "is in fact a scheduled drug" -- and improperly collapses the two clauses. And as noted above, the Law Court has treated "is in fact a scheduled drug" as an entirely different element than "and . . . the drug is a schedule W drug." See Lowden, 87 A.3d at 698 (enumerating elements of a § 1103 offense and separating "is in

fact a schedule drug" from "and . . . the drug is a schedule W drug" to list two distinct elements).

Furthermore, in introducing the drug schedules codified in Me. Rev. Stat. Ann. tit. 17-A, § 1102, the Maine legislature explained that Maine's drug schedules are "established" for the express "purposes of defining crimes under [Maine's drug laws] and of determining the penalties" for state drug crimes. (Emphasis added.) See McLaughlin, 189 A.3d at 268. Consequently, Maine's drug schedules cannot be construed as illustrative examples when they are exhaustive lists that are keyed to punishments for varying classes of drugs. Id.; Swaby, 847 F.3d at 68 (explaining that Rhode Island's drug trafficking statute assigns "'different punishments,' based on the class of a drug, and then 'exhaustive[ly]' lists the individual drugs by type on the state drug schedules" (alteration in original) (citation omitted) (first quoting Mathis, 579 U.S. at 518; and then quoting State v. Feng, 421 A.2d 1258, 1271 (R.I. 1980))). As such, the face of the statute also supports concluding that the specific drug trafficked is an element of a § 1103 offense.

### 3. The Record of Conviction

Lastly, "an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." Mathis, 579 U.S. at 519.

- 23 -

Here, the grand jury charged Moran-Stenson with unlawful trafficking of scheduled drugs under § 1103. And the indictment states that Moran-Stenson "did intentionally or knowingly traffick in what he knew or believed to be a scheduled drug, which was in fact cocaine base, a schedule W drug." (Emphasis added.) Because the indictment refers to one drug (cocaine base) to the exclusion of all other drugs listed in schedule W, the indictment indicates that § 1103's "scheduled drugs" component is a divisible element.

## D. Applying the Modified Categorical Approach to Moran-Stenson's Conviction

Because the "scheduled drugs" component of § 1103 is an element of the offense, the district court could properly use the modified categorical approach to assess whether Moran-Stenson committed a predicate controlled substance offense. See Descamps, 570 U.S. at 257. As the government emphasizes, Moran-Stenson does not argue that the district court erred in its actual application of the modified categorical approach -- for example, by improperly looking beyond the Shepard documents or misreading the indictment. Moran-Stenson's state court indictment shows that he was specifically charged with trafficking cocaine base. Because cocaine base is a federally criminalized drug, his prior offense under § 1103 qualifies as a predicate controlled substance offense under § 2K2.1(a)(4)(A). The district court thus properly applied the federal sentencing enhancement.

- 24 -

### III. Conclusion

For the foregoing reasons, we affirm the district court's judgment.